IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| WILLIAM WAGNER, | |
|---|---|
| Plaintiff, | |
| vs. | Case No.: 3:12-cv-130 |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

### ORDER

**THIS MATTER** came before the Court on a bench trial held on March 24-25, 2014. For the reasons set forth herein, the Court finds in favor of Defendant.

### I. FINDINGS OF FACT

Having reviewed and carefully considered the evidence and arguments presented at trial, the Court makes the following findings of fact:

1.  In July 2009, Plaintiff William Wagner was employed as a long-distance truck driver for BJ Trucking, Inc., d/b/a Mail Transport Services, a/k/a MTS. He had been so employed for about seven years.

2.  MTS is a contractor providing highway trucking services to the United States Postal Service.

3.  In July 2009, Wagner resided near Lehigh, Pennsylvania and drove a mail truck back and forth between the Postal Service's Lehigh Valley facility and Charlotte, North Carolina for about four days a week. The route included stops at Roanoke, Virginia, and Greensboro, North Carolina, and took about thirteen hours to complete. The route terminated at the Charlotte Logistics & Distribution Center, known commonly as "L & DC."

1

4. In addition to driving the mail truck, Wagner's responsibilities included loading and unloading the mail his truck was carrying at the various stops along his route. This was done by pushing and/or pulling rolling carts of mail on and off the truck. These carts varied widely in terms of weight, with some weighing several hundred pounds.

5. Another of Wagner's activities included opening overhead dock doors at the various mail facilities so that the truck could be loaded or unloaded.

6. The overhead door system at the Charlotte L&DC utilized a system whereby coiled springs above the door connect to the door with vertical cables and are tensioned or balanced so that the springs are supposed to do most of the lifting of the door. A person wishing to open the door typically need only exert a small to moderate amount of force to engage the springs and lift the door.

7. On July 21, 2009, at about 2:30 p.m., Wagner backed his truck up to the Charlotte L&DC. He entered the facility in order to unload mail from his truck, which he had backed up to Dock Door 46.

8. While attempting to open Dock Door 46 from inside the facility, Wagner called out that he had hurt his back. Ron Watkins, a USPS employee who drives a forklift at the L&DC, came over to Door 46 and opened it with his forklift.

9. Thereafter, Wagner was transported to CMC-Mercy by John Hunt, another MTS employee. Wagner was discharged from the emergency room with pain medication and instructions to visit his family physician.

10. Upon his return home, Wagner visited his family physician, who sent him for an MRI. The MRI revealed a herniated disc at L4-L5 and at L5-S1.

11. Wagner initially tried to combat his condition with pain management and physical therapy, but when that proved ineffective, he chose to undergo surgery in the form of a lumbar fusion. His surgery was performed by Dr. Allistair Williams in April 2012.

12. The evidence showed that the dock doors at the Charlotte L&DC do sometimes malfunction. When this happens, USPS employees typically place a pallet or some other obstruction in front of that dock door to let truck drivers know that the door is not operating properly, and that they should select another door to use. On July 21, 2009, there was no such signal in place to indicate that Door 46 was not functioning properly.

13. After Wagner's incident with Door 46, several USPS employees inspected the door. All of them concluded that Door 46 was functioning properly. One employee, Derrick Folson, inspected the door because he would need to use it during his shift. Folson is a dock technician during one of the L&DC's busiest shifts, and reported using Door 46 immediately after Wagner's incident with no trouble.

14. Another USPS employee, Sam Wallace, also reported no problems with Door 46 after the incident. Wallace was the maintenance manager at the L&DC, and opened the door himself to ensure that it was functioning properly. He also had other maintenance workers open the door. None of them reported any problems with Door 46.

15. None of the USPS employees who testified reported any problems with Door 46 before Wagner's incident.

16. The evidence also showed that USPS employees sometimes open the dock doors with forklifts rather than by hand. This is not because the doors are particularly difficult to raise, but because it is easier to open the doors with the forklift than to get off the forklift, raise the

door, and then get back on. This practice sometimes results in dings and dents to the dock doors and is generally discouraged by USPS.

## II. CONCLUSIONS OF LAW

Wagner argues that USPS was negligent either by failing to exercise reasonable care in keeping its facility safe, or by failing to warn Wagner of a dangerous condition. For the reasons stated below, the Court cannot conclude that USPS was negligent in its maintenance of Door 46, or that USPS breached any other duty owed to Wagner.

"In this federal tort claims action, arising out of events in North Carolina, the law of that state controls." *Iodice v. United States*, 289 F.3d 270, 274-75 (4th Cir. 2002). In order to establish a *prima facie* case of negligence in North Carolina, a plaintiff must offer evidence that the defendant owed him a duty of care, that the defendant breached that duty, and that the breach was the actual and proximate cause of the plaintiff's injury. *Cowan v. Laughridge Construction Co.*, 291 S.E.2d 287, 289 (N.C. Ct. App. 1982). The plaintiff has the burden of proving these elements by a preponderance of the evidence. This means the trier of fact must "believe that the existence of a fact is more probable than its nonexistence." *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for Southern Cal.*, 508 U.S. 602, 622 (1993).

In North Carolina, landowners have a duty to maintain their premises in a reasonably safe condition for their intended use. *Pulley v. Rex Hospital*, 392 S.E.2d 380 (N.C. 1990). This duty extends to all lawful visitors. *Nelson v. Freeland*, 507 S.E.2d 882, 892 (1998). Generally, "[w]hether a landowner's care is reasonable is judged against the conduct of a reasonably prudent person under the circumstances." *John Walter Kelly v. Regency Ctrs. Corp.*, 691 S.E.2d 92, 95 (N.C. Ct. App. 2010). Landowners also owe a duty to warn of dangerous conditions on their premises "insofar as they can be ascertained by reasonable inspection and supervision."

*Roumillat v. Simplistic Enters.*, 414 S.E.2d 339, 342 (N.C. 1992). However, defendants have no duty to warn of dangers that are open and obvious which a reasonable person of ordinary intelligence would have noticed. *Benton v. Building Co.*, 28 S.E.2d 491, 493 (N.C. 1944). This includes instances where the plaintiff has equal or superior knowledge of the condition. *Newsom v. Byrnes*, 443 S.E.2d 365, 367 (N.C. 1994).

Ultimately, "[i]n order to prove a defendant's negligence, a 'plaintiff must show that the defendant either (1) negligently created the condition causing the injury, or (2) negligently failed to correct the condition after actual or constructive notice of its existence.'" *Fox v. PGML, LLC*, 744 S.E.2d 483, 485 (N.C. Ct. App. 2013) (quoting *Roumillat*, 414 S.E.2d at 342-43).

**1. Plaintiff has failed to establish the existence of a dangerous condition that posed an unreasonable risk of harm.**

In order for Wagner to prevail on his negligence claim, he would have to demonstrate that USPS either negligently created or negligently failed to correct a dangerous condition that posed an unreasonable risk of harm. The Court cannot conclude that USPS was negligent in either respect because Wagner has failed to demonstrate by a preponderance of the evidence that a dangerous condition actually existed.

Wagner testified that when he attempted to open Door 46 on July 21, 2009, the door abruptly jammed about two feet above the ground, which caused his back injury. Standing alone, this might indicate that the door somehow malfunctioned. But at least three USPS employees who worked at the L&DC at the time indicated that there were no problems with Door 46 before or immediately after Wagner's incident. Ron Watkins, who was closest to Door 46 when Wagner's injury occurred, immediately brought his forklift to Door 46 and opened it with the forklift. While Watkins did not open the door by hand, he indicated that the door lifted as it normally did. Sam Wallace, in his role as maintenance manager, made a closer inspection of the

door, including lifting it by hand, and found no problems with the door. To ensure that the door was working properly, he had other USPS employees open it as well. None of them reported any problems with Door 46.

The Court found especially compelling the testimony of Derrick Folson. Folson testified that he arrived at work at the L&DC soon after Wagner's incident to begin his shift. He inspected his work area, which included the loading docks, in preparation for his shift to begin. He specifically checked Door 46 to make sure that it was working properly because he would need to use the door during the busier "Tour 3" shift. He found no problems with the door, and indeed did use it throughout his shift without incident.

The only person who actually saw Door 46 jam was Wagner. Ron Watkins was closest by—he testified that he saw Wagner struggling with the door and then went to get his forklift. While he was turned away, he heard Wagner exclaim that he had hurt his back. He did not actually see the door jam, and in fact reported no problems with the door either before or after that time. Lamar Anthony, the acting supervisor at the L&DC, also testified that there were no problems with Door 46 either before or after the accident. Anthony did generate a report that indicated that Door 46 jammed (Pl.'s Exh. 61), but Anthony testified that he was not near the accident when it happened, and that he generated the report based on conversations with Wagner and Ron Watkins. Anthony's report also indicates that the cause of the accident was "[wear] on door" (*id.*), but at trial Anthony indicated that he did not actually see anything wrong with the door and did not elaborate on the statement in the report.

In short, the weight of the evidence indicates that the condition of Door 46 at the time of Wagner's accident was not such that it created an unreasonable risk of harm. The Court cannot say conclusively if the door actually jammed when Wagner attempted to open it, but given the

6

consistent testimony of numerous USPS employees, it does appear that the door was generally functioning as it was supposed to. The record does not indicate that USPS did anything to cause a dangerous condition in the door, and given that the USPS employees who most often used the door—as well as those who were responsible for maintaining it—could not find anything wrong with it, the Court cannot conclude that there was any dangerous condition that USPS negligently failed to correct. The same reasoning extends to Wagner's assertion that USPS failed to warn him of a dangerous condition—because the Court cannot conclude that a dangerous condition actually existed, it cannot find that USPS negligently failed to warn Wagner of such a condition.

Wagner also submitted deposition testimony from two other MTS drivers to support his assertion that Door 46 was in a state of disrepair or was otherwise malfunctioning before the incident in question. George Johnson testified that he had been to the Charlotte L&DC on July 18, just three days before Wagner's accident, and that he had used Door 46. (Deposition of George Johnson at 17). He further testified that, when he attempted to open the door, he only raised it "about an inch or so" before "[i]t got real hard." (*Id.* at 31). At that point, he motioned for a USPS employee to come over and open it with a forklift. Johnson also testified that there was some sort of dent in Door 46 near one of the rollers, and indicated that he thought that might have been the problem. (*Id.* at 32). He did not notify any USPS employees of the problem.

Another MTS driver, Eric Bossert, gave similar testimony at his deposition. Bossert testified that he "made at least two complaints" about Door 46 to USPS employees "because the door was all bent up and hard to open." (Deposition of Eric Bossert at 19-20). More specifically, Bossert testified that the door "would jam up" either at the floor or about a foot above the floor, and that it could not be opened "without a struggle." (*Id.* at 40). Ultimately, however, Bossert did not ask any USPS employees for help and was able to open the door himself. Bossert's

7

complaints both occurred within two weeks of Wagner's accident; however, he was unable to identify precisely with whom he spoke about the problem, offering only loose descriptions of the USPS employees. (*Id.* at 21).

While this testimony is pertinent to the condition of Door 46 before Wagner's accident, the Court is not persuaded that the condition of the door was dangerous or that it posed an unreasonable risk of harm. As an initial matter, the Court notes that the testimony of Mr. Johnson and Mr. Bossert is strikingly similar—both indicate that Door 46 was difficult to open in substantially the same way, that it appeared to have suffered some type of dent in one of the panels, and that it had a U-shaped handle at the bottom-center of the door. The evidence submitted at trial—namely a photograph of the door time-stamped the date of the incident— clearly demonstrates that there is no handle at the bottom of Door 46, and does not appear to show any substantial damage to the door. (*See* Def.'s Exh. 10a). This, taken together with the testimony of the various USPS employees that nothing was wrong with Door 46, seriously calls into doubt the testimony of Johnson and Bossert.

However, even accepting the testimony of the other MTS drivers as true, the Court is not persuaded that Door 46 was in such a condition that it was dangerous or that it posed an unreasonable risk of harm. Both Johnson and Bossert testified that the door appeared to be dinged up and that it was difficult to open. Bossert testified, however, that he was able to open the door without assistance. While Johnson testified that he asked for assistance from a USPS employee, he did not indicate that he could not have opened the door—only that he experienced some initial resistance and then said "[f]orget it." (Johnson Dep. at 17). The evidence submitted at trial showed that the Charlotte L&DC is a busy industrial operation where many truckloads of mail arrive and depart each day. It is not unreasonable to expect that minor dents and dings might

8

occur, or even that the dock doors might occasionally be difficult to open for one reason or another. This does not immediately make them dangerous. In an environment where drivers and mail handlers regularly move carts of mail weighing hundreds of pounds, the occasional difficulty with a warehouse door does not obviously create an unreasonable risk of harm. If anything, this type of difficulty could be expected, by USPS employees and visitors alike.

In sum, based on the testimony and other evidence offered at trial that Door 46 was working properly, as well as considerations about the nature of the work environment and the work performed at the L&DC, the Court is not persuaded that Door 46 was dangerous or that it posed an unreasonable risk of harm. The Court does not doubt that Plaintiff suffered an injury while attempting to open Door 46, but USPS cannot be held strictly liable for his injuries. Plaintiff was required to demonstrate by a preponderance of the evidence that USPS was negligent in its maintenance of the premises, or that it breached a duty to Plaintiff by failing to warn him about Door 46. The Court finds that Plaintiff did not meet this burden.

Defendant also raises compelling questions relating to causation and damages, but because the Court finds that USPS was not negligent, it does not proceed to these questions.

### III. CONCLUSION

Based on the foregoing, the Court finds in favor of the Postal Service. The Clerk of Court is directed to enter judgment accordingly and close this case.

**SO ORDERED.**

Signed: April 2, 2014

Graham C. Mullen
United States District Judge